UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

| | |
|---|---|
| In re: | Chapter 7 |
| Daniel Fagan and Julie Fagan, | Case No. 10-52334 |
| Debtors. / | Hon. Phillip J. Shefferly |
| Daniel Fagan and Julie Fagan, | Adversary Proceeding No. 11-06866-PJS |
| Plaintiffs, | |
| v. | |
| Collection Division, State of Michigan Department of Treasury, | |
| Defendant. / | |

### OPINION GRANTING MOTION TO DISMISS

#### Background

This opinion addresses the Debtors' request to have the Court determine that a debt to the State of Michigan Department of Treasury ("Defendant") was discharged in their Chapter 7 bankruptcy case.

The Debtors filed a joint Chapter 7 petition on April 14, 2010. They scheduled two debts to the Defendant on Schedule E. One of the debts was for delinquent withholding taxes for a business in which one of the Debtors, Julie Fagan, was a corporate officer. The other debt also arose out of that business and was listed as $80,190.19 for "ILTA [sic] Fuel Tax, Use Tax, Withholding Tax and Michigan Business Tax owing due to business." The Debtors received a discharge on November 17, 2010 and the case was closed December 7, 2010.

The Debtors filed an ex parte motion to reopen their case on October 27, 2011, which the Court granted. The Debtors then filed an adversary complaint to determine that the second debt listed to the Defendant on Schedule E was discharged. The complaint alleges that the Defendant has continued to collect the "IFTA Fuel Tax," post-discharge, and filed a notice of lien on real property on August 22, 2011. A copy of the notice indicates that it is both for IFTA fuel taxes and withholding taxes, totaling $65,378.29. The Debtors' complaint does not seek any relief regarding the withholding taxes but does allege that the IFTA taxes are not the type of taxes excepted from discharge under § 523(a)(1) of the Bankruptcy Code.

The Defendant moved to dismiss the complaint under Rule 12(b)(6), incorporated by Fed. R. Bankr. P. 7012. The Defendant explains that one of the Debtors, Julie Fagan, was assessed liability International Fuel Tax Agreement (IFTA) taxes as a corporate officer of Rumble Trucking and Logistics. According to the Defendant, tax returns were filed for that corporation for the IFTA taxes for March 2008, March 2009, June 2009 and September 2009, but the taxes were not paid for those quarters. The total with interest and penalties is $65,943.52. The Defendant argues that these taxes are excepted from the discharge of Julie Fagan, under § 523(a)(1)(A) because they are taxes of the kind and for the periods specified in § 507(a)(8)(E).

The Defendant filed a brief in support of its motion, addressing an issue of first impression for this Court. There are three separate sub-issues: (1) whether Michigan IFTA taxes are a "tax" under federal bankruptcy law; (2) whether the IFTA taxes are an "excise tax" under § 507(a)(8)(E); and (3) whether the IFTA taxes are taxes on "a transaction" as required by § 507(a)(8)(E). There is no controlling precedent, but the Defendant cited cases in support of its position on all three sub-

issues. The Debtors filed a brief in response, arguing that IFTA taxes do not qualify as a tax, are not an excise tax and are not a tax on a transaction. Each argument is addressed in turn below.

Standard for Dismissal under Rule 12(b)(6)

Fed. R. Civ. P. 8(a)(2), incorporated by Fed. R. Bankr. P. 7008(a), requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The purpose of this pleading standard is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true . . . . A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts

-3-

11-06866-pjs    Doc 16    Filed 02/14/12    Entered 02/15/12 08:07:15    Page 3 of 11

is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks and citation omitted).

The Debtors attached matters outside the pleadings in support of their response to the Defendant's motion to dismiss. Under Rule 12(d), when matters outside the pleadings are presented to and not excluded by the Court in support of a motion under Rule 12(b)(6), the motion must be treated as a motion for summary judgment under Rule 56. The Court will exclude the materials supplied by the Debtors and treat the Defendant's motion solely as a motion to dismiss under Rule 12(b)(6).

Discussion

Section 523(a)(1)(A) excepts from discharge any debt "for **a tax** . . . of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.]" (Emphasis added.) Section 507(a)(8)(E) gives priority to the

> allowed unsecured claims of governmental units, only to the extent that such claims are for – . . . an **excise tax** on . . . **a transaction** occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition[.] (Emphasis added.)

The parties refer to the "IFTA" as if it were a tax. In fact, "IFTA" stands for International Fuel Tax Agreement. The proper term for the actual tax assessed under such an agreement is the international fuel tax. The international fuel tax is assessed under the Michigan Motor Carrier Fuel Tax Act, Mich. Comp. Laws Ann. §§ 207.211 - .232. The preface to the Act describes it as

> AN ACT to prescribe a privilege tax for the use of public roads and highways of this state by motor carriers by imposing a specific tax upon the use of motor fuel within this state; to provide for certain credits against this tax and certain mechanisms for paying, collecting, and enforcing this tax; to provide for the licensing of motor carriers and for exemptions from licensure; to require the keeping and providing for the examination of certain reports; to provide review procedures for the assessment

-4-

of the tax and revocation of a license; to impose certain duties upon and confer certain powers to certain state departments and agencies; to prescribe certain penalties for the violation of this act; and to make appropriations.

Section 207.212a gives the Defendant authority to enter into reciprocal agreements "providing for the imposition of a motor fuel tax" with other states, territories or foreign countries, and requires the Defendant to enter into an international fuel tax agreement.

Section 207.212(1) provides for the calculation of the amount of international fuel tax required to be paid by a motor carrier. The international fuel tax is calculated based "on the amount of motor fuel consumed in qualified commercial motor vehicles on the public roads or highways within this state." The tax rate is 15¢ per gallon. "In addition, qualified commercial motor vehicles licensed under this act that travel in interstate commerce will be subject to the definition of taxable motor fuels and rates as defined by the respective international fuel tax agreement member jurisdictions." Id. Quarterly returns are required, accompanied by the amount of the tax due.

The first question is whether the international fuel tax is a "tax" under federal bankruptcy law.

<u>1. The Michigan international fuel taxes are a "tax" under federal bankruptcy law.</u>

In <u>Ohio Bureau of Workers' Compensation v. Yoder</u> (<u>In re Suburban Motor Freight, Inc.</u>), 36 F.3d 484 (6th Cir. 1994) ("<u>Suburban II</u>"), the Court of Appeals for the Sixth Circuit discussed the meaning of "tax" in determining whether reimbursement claims for workers' compensation payments were a tax under § 507 and thus entitled to priority.

> Whether an obligation is a tax within the meaning of the Bankruptcy Code is determined by federal law. The Supreme Court has defined taxes as "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it."

Id. at 487 (quoting New York v. Feiring, 313 U.S. 283, 285 (1941)).

One widely accepted four-part test for a "tax" was announced by the Ninth Circuit, and followed by the Sixth Circuit in an earlier decision in the Suburban Motor Freight, Inc. case involving the same debtor and creditor. Yoder v. Ohio Bureau of Workers' Compensation (In re Suburban Motor Freight, Inc.), 998 F.2d 338 (6th Cir. 1993) ("Suburban I"). The four parts of the test are "(1) an involuntary pecuniary burden; (2) imposed by the state legislature; (3) for a public purpose; (4) under the police or taxing power of the state." Suburban II, 36 F.3d at 488 (discussing "Suburban I", where the court found that the Ohio Bureau of Workers' Compensation claim for unpaid premiums was entitled to priority as an excise tax (citing County Sanitation District v. Lorber Industries of California (In re Lorber Industries of California), 675 F.2d 1062, 1066 (9th Cir.1982))).

However, on revisiting the test, the Sixth Circuit in Suburban II found the Lorber factors too broad in that a governmental entity almost always had a public purpose. As a result, the third factor would always be met. Therefore, the Sixth Circuit refined the Lorber test by adding two factors: "(1) that the pecuniary obligation be universally applicable to similarly situated entities; and (2) that according priority treatment to the government claim not disadvantage private creditors with like claims." Surburban II, 36 F.3d at 488. The primary case that the Defendant relies on, Trustees of the Trism Liquidating Trust v. I.R.S. (In re Trism, Inc.), 311 B.R. 509, 514 (B.A.P. 8th Cir. 2004), applies the six-factor Lorber plus Suburban II test, as have many other courts. This is also the test that the Debtors use in their argument. Here is how the test applies in this case.

(1) An involuntary pecuniary burden. The Debtors argue that the "IFTA" is not a tax, but instead it is an agreement with other members to allocate taxes based on the miles driven by motor carriers in other states. This confuses the agreement among the states with the actual tax imposed

11-06866-pjs    Doc 16    Filed 02/14/12    Entered 02/15/12 08:07:15    Page 6 of 11

by the statute and collected under the agreement. The Debtors then argue that the tax is not involuntary but voluntary in the sense that a motor carrier could simply opt not to drive interstate but just stay within the state. This is sophistry. People can opt to be lawyers instead of motor carriers, but that does not make the tax on motor carriers voluntary. Once a motor carrier travels across state boundaries, the tax is imposed whether the motor carrier agrees to accept it or not.

(2) Imposed by the state legislature. The Debtors do not take issue with this factor.

(3) For a public purpose. The Debtors contend that the international fuel tax constitutes an "obligation" of the State of Michigan to pay taxes due to member states, and Michigan is simply passing on its obligation to the Debtors and other motor carriers. The Debtors evidently believe that a tax must be an "expense" of the State of Michigan. The Court is not sure that this is a distinction with a difference. Even then, in characterizing the international fuel tax as an "obligation," the Debtors recognize that Michigan is a member of the IFTA in order to facilitate interstate travel through states with differing rates for fuel tax. This is an accurate summary of the IFTA, and the Debtors have countered their own argument. The international fuel tax has a public purpose.

(4) Under the police or taxing power of the state. The Debtors do not take issue with this factor.

(5) That the pecuniary obligation be universally applicable to similarly situated entities. The Debtors argue that this factor is not met because not all motor carriers are subject to the tax – only those who elect to travel interstate. This again uses circular reasoning. Similarly situated entities are those motor carriers who travel interstate. Those who do not are not taxed.

(6) That according priority treatment to the government claim not disadvantage private creditors with like claims. The Debtors agree that there are no private creditors with similar claims.

Each of the six factors under the Sixth Circuit's <u>Suburban II</u> test for a "tax" under federal bankruptcy law has been met for the international fuel tax.

<u>2. The international fuel taxes are an "excise tax" as required by § 507(a)(8)(E).</u>

The term "excise tax" is not defined in the Bankruptcy Code. The court in <u>In re Albion Health Services</u>, 339 B.R. 171 (Bankr. W.D. Mich. 2006), *aff'd* 360 B.R. 599 (B.A.P. 6th Cir. 2007), set forth two generally accepted definitions of "excise tax":

> "[a] tax imposed on the performance of an act, the engaging in an occupation, or the **enjoyment of a privilege**. A tax on the manufacture, sale, or use of goods or on **the carrying on of an occupation or activity**, or a tax on the transfer or property. In current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax (*e.g.*, federal alcohol and tobacco excise taxes)[.]"

<u>Id.</u> at 178-79 (quoting Black's Law Dictionary (6th ed.)) (emphasis added) (citations omitted). Alternatively, the general dictionary definition of an excise tax is

> "an internal tax, duty or impost levied upon the manufacture, sale, or consumption of a commodity within a country and [usually] forming an indirect tax that falls on the ultimate consumer[;] c: any of various duties or fees levied on producers of excisable commodities[;] d: **any of various taxes upon privileges (as of engaging in a particular trade or sport, transferring property, or engaging in business in a corporate capacity) that are often assessed in the form of a license or other fee[.**]"

<u>Id.</u> at 179 n.8 (quoting Webster's Third New International Dictionary) (emphasis added).

The Defendant relies on the preface of the Michigan Motor Carrier Fuel Tax Act, which states that the purpose of the act is "to prescribe a privilege tax for the use of public roads and highways of this state by motor carriers by imposing a specific tax upon the use of motor fuel within this state . . . ." The Defendant also relies on <u>Dawson v. Oregon</u> (<u>In re Dawson</u>), 98 B.R. 519, 522 (Bankr. D. Ore. 1989), where the court found that the Oregon motor carrier tax was an excise tax.

The Debtors distinguish Dawson and other cases because they address the term excise tax in other contexts. The Debtors conclude that the international fuel tax does not fit the legal dictionary definition of an excise tax because it arises as a result of the voluntary act of engaging in interstate commerce.

The Defendant has the better argument. The Michigan legislature declared the purpose of the statute to be the imposition of a specific tax on motor fuel for the privilege of using the public roads and highways of Michigan. This meets both the legal and common definitions of the term excise tax.

3. The international fuel taxes are taxes on "a transaction" pursuant to § 507(a)(8)(E).

The last element for a tax to be an excise tax under § 507(a)(8)(E), and thus to be non-dischargeable under § 523(a)(1)(A), is that it must be a tax on a "transaction." In Quiroz v. Michigan Dept. of Treasury (In re Quiroz), 450 B.R. 699 (Bankr. E.D. Mich. 2011), Judge Rhodes addressed whether the Michigan single business tax was an excise tax on a transaction. "In the context of an excise tax, a transaction is often a discrete act, such as the sale of cigarettes." Id. at 701 (citation omitted). "However, transactions are not limited to separate and distinct acts or specific taxable events." Id. (citation omitted). Judge Rhodes looked to a case discussing whether the Texas franchise tax was a tax on a transaction. In concluding that the Texas franchise tax met that definition, the Illinois bankruptcy court explained that

> "the state franchise tax is imposed upon corporations transacting business in Texas. That business necessarily encompasses and requires a variety of transactions. Whether a transaction consists of hiring a worker, executing a contract, operating a vehicle on Texas roadways, renting office space, or selling goods, any single transaction requires the corporation to pay state franchise tax for that calendar year. The Trust does not dispute that NSC conducted business in Texas during calendar year 2002, thereby exercising a privilege that confers upon corporations various economic benefits, as well as the opportunity to invoke the protection of Texas law.

11-06866-pjs    Doc 16    Filed 02/14/12    Entered 02/15/12 08:07:15    Page 9 of 11

> Therefore, NSC incurred liability for corporate franchise tax under the Texas Tax Code. That the tax is not imposed on a discrete, readily identifiable transaction is of no consequence."

Id. at 702 (quoting In re Nat'l Steel Corp., 321 B.R. 901, 912 (Bankr. N.D. Ill. 2005)). Judge Rhodes "adopt[ed] this rationale and conclude[d] that the [single business tax] is a tax on a transaction consisting of the act of doing business in the State of Michigan." Id.

Another case more closely on point, and one that the Defendant also relies on, is In re Trism, Inc., 311 B.R. 509 (B.A.P. 8th Cir. 2004). This case dealt with whether an IRS obligation was an excise tax entitled to priority under § 507(a)(8)(E). The obligation was imposed by § 4481 of the IRC, which "imposes a yearly financial obligation on the use of large trucks on highways within this country," that are driven 5,000 miles or more annually, "determined by the weight of the vehicle." Id. at 513. The Trism panel concluded that the obligation was an excise tax on a transaction.

> The obvious meaning of transaction in Section 507(a)(8)(E) is some act by the taxpayer. The transaction at issue here is the operation of a heavy vehicle on the highways more than 5,000 miles in a calendar year. The operation of the vehicle for 5,000 miles is an act or a series of acts whereby the right to collect payment of the heavy vehicle tax arises. The event of operating the vehicle falls within the broad definition of transaction. This conclusion is supported by the legislative history of Section 507(a)(8) which provides as follows:
>
>> "All federal, state or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and **truck taxes**."
>
> We conclude that the obligation imposed by Section 4481 of the Internal Revenue Code is an excise tax on the transaction of operating a heavy truck on the highways in excess of 5,000 miles.

Id. at 517 (quoting 124 Cong. Rec. H. 113 (Sept. 28, 1978); S. 17430 (Oct. 6, 1978) (emphasis added)) (other citations omitted).

11-06866-pjs    Doc 16    Filed 02/14/12    Entered 02/15/12 08:07:15    Page 10 of 11

The international fuel tax is assessed based on the amount of fuel consumed by commercial motor carriers traveling on Michigan public roads and highways. The "transaction" in this case is the operation of a commercial motor carrier on state roads and highways, and the consumption of fuel through that operation. The third and final element of an excise tax under § 507(a)(8)(E) has been met.

## Conclusion

The Debtors' complaint alleges that the international fuel tax owed by the Debtor, Julie Fagan, to the Defendant is not within the non-dischargeablity exception of § 523(a)(1) of the Bankruptcy Code. Contrary to the Debtors' allegation, the international fuel tax is an excise tax on a transaction, and therefore is a priority claim under § 507(a)(8)(E), which is a type of non-dischargeable tax specified in § 523(a)(1)(A). The Debtors have not stated a claim upon which relief may be granted. The Defendant's motion to dismiss is granted. The Court will enter a separate order consistent with this opinion.

.

**Signed on February 14, 2012**

                                         **/s/ Phillip J. Shefferly**
                                         **Phillip J. Shefferly**
                                         **United States Bankruptcy Judge**